PEPPLER v. TOLLETTENE.

1. THEATERS AND SHOWS—WATER TOBOGGAN—NEGLIGENCE—PRESUMPTIONS.

   No presumption of negligence on part of owners and operators of amusement park arises from mere fact of injury to young man using sled on water toboggan slide.

2. SAME—NO LIABILITY IN ABSENCE OF NEGLIGENCE.

   Where evidence clearly shows that injury to young man using sled on water toboggan slide at amusement park was caused by manner in which he was riding, and was not due to any defect in sled or slide, proprietors and operators of park are not liable therefor.

Appeal from Oakland; Covert (Frank L.), J. Submitted April 6, 1932. (Docket No. 21, Calendar No. 36,324.) Decided June 6, 1932. Rehearing denied September 14, 1932.

Separate actions of case by Henry Peppler, individually, and as guardian of his minor son, Wayne C. Peppler, against Louis P. Tollettene and another for damages sustained when Wayne C. Peppler was injured while using defendants' toboggan slide. Cases consolidated for trial. Verdicts and judgments for plaintiff. Defendants appeal. Reversed.

*Lawrence W. Gaffney* and *Coulter & Hampton,* for plaintiff.

*Payne & Payne* and *Pelton & McGee,* for defendants.

SHARPE, J. The defendants, husband and wife, were the owners and operators of an amusement

As to duty and liability of owner or keeper of place of amusement respecting injuries to patrons, see annotation in 22 A. L. R. 610, 668 *et seq.;* 29 A. L. R. 32; 38 A. L. R. 361; 44 A. L. R. 209; 53 A. L. R. 862; 61 A. L. R. 1300.

park at Walled Lake, in Oakland county, in which were installed a bath house, dance hall, refreshment stand, and a water toboggan slide. On September 8, 1929, Wayne C. Peppler, then 18 years of age, went to the park, accompanied by three other young men, paid the fee for the use of, and selected, one of the sleds, and proceeded to slide down the toboggan. He made a number of trips. On his last one, when near the bottom, he was thrown off the sled and slid the rest of the way down, sustaining quite severe injuries. These two actions, which were tried together, were brought, one by his father, Henry L. Peppler, as his guardian, to recover the damages due to such injury, and the other by his father individually to recover the expense he was put to for doctors, nurses, hospital expenses, etc., incident thereto. The plaintiff had verdicts and judgments, of which defendants seek review by appeal.

The serious question presented is whether the injury the young man sustained was attributable to any negligence on the part of the defendants. He testified:

"On September 8, 1929, I had an accident. On this particular occasion I brought my sled as usual and placed it in the track and on various times before we had tried different methods of going down sitting down or sitting down backwards, and on this particular occasion I was standing or rather sitting in a hunched position backwards with my hands on the sled, I had hold of the sled completely and I started off the slide, I was riding backwards. I was in a hunched position down on my hands and heels. I had my weight on my feet but I was hanging on to the sled with my hands, hanging on to these handles I described. As I got around three-quarters of the way down or close to the bottom I felt a terrific jerk and the sled just jerked out of

my hands and I could no longer keep it in my hands or maintain my balance and I was thrown off onto the slide, or up in the air first and I landed on the slide and I sprawled all over the slide the rest of the way down.  *  *  *  I was thrown the rest of the way down the track, I landed hitting my knee and the back part of my body and my arm and burned my shoulder. As it struck I don't know where the sled went, but I went down the rest of the slide on my body and landed in the water below.''

He further testified that his head was cut open in two places and his knee badly cut. It appears that a piece of metal was taken out of the back of his leg. Two of the young men who had accompanied Wayne to the park were called as witnesses in his behalf. They both testified that the front end of the sled did not rise up until Wayne was near the bottom, when the sled is no longer attached to the rails. One of them came down the slide just before, and the other right after, Wayne came, and neither of them met with an accident in doing so. There was an abundance of proof that others used the slide after Wayne was injured, some of them using the same sled on which he was riding at the time of his injury.

It will serve no useful purpose to refer to other testimony. It is clearly apparent that the injury suffered by the young man was not due to any defect in the slide or in the sled on which he was riding. The metal removed from his leg was not detached from the rails or the sled. No presumption of negligence arises from his injury alone.

From a careful reading of the record, we cannot escape the conviction that his fall from the sled was caused by the manner in which he was riding on it. It had printed thereon in large letters: ''Standing forbidden.''

The judgments in both cases are reversed and set aside, with costs to appellants, and the causes remanded, with directions to enter judgments for the defendants. The conclusion reached renders it unnecessary to consider the other errors relied on by the appellants.

CLARK, C. J., and McDONALD, POTTER, FEAD, WIEST, and BUTZEL, JJ., concurred. NORTH, J., did not sit.